## LANDRETH and others *v.* LANDRETH.

*(Circuit Court, E. D. Wisconsin.  October 27, 1884.)*

TRADE-MARK — USE OF SURNAME — PARTIES OF SAME NAME — DECEPTION AND
FRAUD—INJUNCTION.
   While a party cannot be enjoined from honestly using his own name in ad-
vertising his goods and putting them on the market, where another person,
bearing the same surname, has previously used the name in connection with his
goods in such manner and for such length of time as to make it a guaranty
that the goods bearing the name emanate from him, he will be protected against
the use of that name, even by a person bearing the same name, in such form
as to constitute a false representation of the origin of the goods, and thereby
inducing purchasers to believe that they are purchasing the goods of such other
person.

In Equity.
*George Harding* and *Francis T. Chambers,* for complainants.
*Nash & Nash,* for defendant.
   DYER, J.   This is a suit for an injunction to restrain the defendant
from using a certain label which the complainants allege they have
adopted as their trade-mark in the sale of a certain variety of seeds
known as "Landreths' Extra Early Peas."   A motion has been made
for a preliminary injunction, and, at the present stage of the case, I
do not deem it necessary to do more than to announce briefly and
quite informally my conclusions upon certain points concerning which
my mind is free from doubt.   There are some questions in the case
upon which more light may be thrown by further and more elaborate
argument, and the disposition of which, I think, should be postponed
until the hearing on the merits.   At present, I can hardly think the
defendant has not the right to raise and sell the seed known as
"Landreths' Extra Early Peas;" nor am I now of the opinion that he
should be restrained from putting the peas on the market in bags of
various sizes, fastened in the manner shown, and identified by such a
metallic seal as it appears he now uses.
   Further, it is not clear that the defendant has not the right to ad-
vertise his peas as "Landreths' Extra Early Peas," provided he does
so in such manner as to clearly inform the public that the peas are
of his own growth and production.   It seems to me this case is not,
accurately speaking, one of trade-mark or trade-name.   It is rather
a case in which the question appears to be whether the defendant, by
the use of certain labels or inscriptions on the bags in which his peas
are put upon the market, is not selling his own goods as the goods of
Landreth & Sons, of Philedelphia.   The complainants, in 1873,
placed upon their bags and adopted this inscription, printed in blue
ink, and in the following form:

Guaranteed to Contain
Landreths'
Extra Early Peas,
Provided the Seal is Unbroken.

Below which is printed the quantity of peas contained in the bag, as, for instance, "1-4 Bus.," and the year. It is very satisfactorily shown that, by this form and character of label, the complainants' bags have become known and recognized by dealers and by the public as containing peas produced and sold by the complainants; and it would appear that this form of designation of their goods has become, by use and public recognition, valuable to them. It is, so to speak, the recognized flag under which they sail in the trade. The defendant, in 1883, having commenced the business of producing and selling a variety of peas which he advertises as "Landreths' Extra Early Peas," at Manitowoc, in this state, placed upon the bags in which his peas were sold, the following inscription, printed in blue ink:

This Bag Contains
Landreths'
Extra Early Peas,
Provided
The Seal is Unbroken.

Below this label is printed the quantity of peas contained in the bag, as, for example, "1-4 Bus.," and the year. That this was a substantial adoption of the complainants' label, in its collocation of words and general appearance, cannot be doubted. The deviation is so slight as not to be observable, except as the two labels are placed side by side. It is equally clear that an ordinary purchaser, accustomed to rely on the inscription upon the complainants' bags as designating the peas grown and sold by them, would be readily led to suppose, upon ordinary observation of the defendant's label, that the peas put up in his bags and sold by him were the goods of the complainants. In short, the defendant's label is a very plain imitation of that previously adopted by the complainants. There is nothing in the defendant's label to fairly distinguish his production of "Landreths' Extra Early Peas" from that of the Philadelphia producers. Even admitting that the defendant has the right to use the same words as those which constitute the complainants' label, he has no right to use them in such form or such style of arrangement, as to lead the public to suppose that the peas contained in his bags are peas grown and sold by the complainants. This is so, without regard to any question of tech-

nical trade-mark or trade-name. The authorities in abundance declare this to be the law.

In *McLean* v. *Fleming*, 96 U. S. 254, the supreme court say:

"Nor is it necessary, in order to give a right to an injunction, that a specific trade-mark should be infringed; but it is sufficient that the court is satisfied that there was an intent on the part of the respondent to palm off his goods as the goods of the complainant, and that he persists in so doing after being requested to desist."

Of course, a party cannot be debarred from the right to honestly use his own name in advertising his goods and putting them on the market, but where other persons bearing the same surname have previously used the name in connection with their goods, in such manner and for such length of time as to make it a guaranty that the goods bearing the name emanate from them, they will be protected against the use of that name, even by a person bearing the same name, in such form as to constitute a false representation of the origin of the goods. To illustrate: The complainants and the defendant bear the same surname. Each is a dealer in "Landreths' Extra Early Peas." While the defendant has the right to use his own name in advertising his peas and putting them on the market, he has not the right to use it in such manner as to lead dealers and purchasers to suppose that, when in fact purchasing his peas, they are purchasing the peas grown and sold by the complainants. Adjudged cases thus enunciate the law. As is stated in one of them, "no man has the right to dress himself in colors, or adopt and bear symbols, to which he has no peculiar or exclusive right, and thereby personate another person, for the purpose of inducing the public to suppose, either that he is that other person, or that he is connected with and selling the manufacture of such other person, while he is really selling his own." See, also, *Holloway* v. *Holloway*, 13 Beav. 209. Many other cases of similar and uniform purport might be cited.

Now, as I have said, the defendant's label, is, as it seems to me, a palpable imitation of the complainants'. In the color of ink used, in the arrangement of the words, and in the general style of the label, he has, so to speak, dressed his goods in the garb previously adopted by the complainants. Whether intended or not, this necessarily operates as a fraud upon them, and upon the public. If the defendant has the right to use the same words as those which constitute the complainants' label, he ought to accompany them with some clear *indicia* of the source of the goods. He seems to have done so in his late issue of circulars and advertising cards. In the absence of anything in the inscription he places on his bags, distinctly denoting that he is the producer and seller of the peas in which he deals, called "Landreths' Extra Early Peas," he evidently leads or may lead purchasers to believe that in purchasing his peas they are purchasing the peas grown and sold by the complainants. This appears from affidavits presented on this motion. Such abandonment of their label

or inscription by the complainants as deprives them of the right to be protected in the use of the same, is, I think, not shown.

The case seems to be a clear one for a preliminary injunction to the extent indicated, and upon the execution by the complainants of a bond in the usual form, in the sum of $2,000, with surety to be approved by the clerk, an injunction, *pendente lite*, will issue, restraining the defendant from placing on the bags used by him in putting his peas on the market, a label or inscription resembling in design, form, and arrangement, or collocation of identical words, the label or inscription of the complainants, as does the label now used by the defendant.

The printing of the letter "A" over the word "Landreths'," by the defendant, on the bags of peas more recently sent out by him, does not, in the form and style in which it is printed, relieve his label of its tendency to mislead.